1
2
3
4
5
6
7               IN THE UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9   ALONZO DEON JOHNSON,

10          Petitioner,                    No. CIV S-03-2063 RBB JFM P

11      vs.

12  CLAUDE E. FINN, Warden,

13          Respondent.

14  _____/

15  DARRYL L. THOMPSON,

16          Petitioner,                    No. CIV S-04-2208 RBB JFM P

17      vs.

18  TOM L. CAREY, Warden,

19          Respondent.

20  _____/        ORDER

21          Petitioners are state prisoners proceeding through counsel with applications for a

22  writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioners' motions for discovery came on

23  regularly for hearing October 25, 2007.  David M. Porter, Assistant Federal Defender, appeared

24  on behalf of petitioners.  R. Todd Marshall, Deputy Attorney General, appeared for respondents.

25  Upon review of the motions and the documents in support and opposition, upon hearing the

26  arguments of counsel and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

1

1    Petitioners seek a court order issuing a subpoena duces tecum pursuant to Local

2  Rule 42-250 and Fed. R. Civ. P. 45 commanding the San Joaquin County District Attorney's

3  Office to produce and permit inspection and copying of:  (1) its files relating to the case of

4  People v. Johnson and People v. Thompson, Case Nos. SF076772A and SF076772C, including,

5  but not limited to, any and all notes generated by the trial prosecutor, Deputy District Attorney

6  Ronald Freitas, regarding the jury selection proceedings in the above entitled matter that are in

7  the County's actual or constructive possession or control; and (2) any and all notes generated by

8  Ronald Freitas regarding jury selection in other prosecutions in which he conducted the jury

9  selection from February 1995 to February 2000.[1]

10    Respondents oppose the requests, claiming the notes are protected by the

11  "attorney work product privilege" and the requests are overbroad and include irrelevant

12  materials.  (Opp'n at 2-4.)

13    Although related to the attorney-client privilege by the common assumption that

14  an attorney cannot provide full and adequate representation unless certain matters are kept

15  beyond the knowledge of adversaries, the focus of the attorney work product protection is on

16  encouraging careful and thorough preparation by the lawyer.  In the seminal case of Hickman v.

17  Taylor, 329 U.S. 495 (1947), the Supreme Court recognized that an attorney's mental processes

18  must, to some extent, be protected from disclosure to the opposing side.  The attorney work

19  product protection has been codified in the Federal Rules of Civil Procedure.  Rule 26(b)(3)

20  provides, in pertinent part:

21      [A] party may obtain discovery of documents and tangible things
        otherwise discoverable . . . and prepared in anticipation of
22      litigation or for trial by or for another party or by or for that other
        party's representative . . . only upon a showing that the party
23      seeking discovery has substantial need of the materials in the
        preparation of the party's case and that the party is unable without
24

25      [1]  Counsel defines "notes" as documents, memoranda, reports, or other writings, whether
     they are generated and/or maintained by hand, computer or are recorded on audio or video tape,
26   or on other electronic medium.

1    undue hardship to obtain the substantial equivalent of the material
     by other means.  In ordering discovery of such materials when the
2    required showing has been made, the court shall protect against
     disclosure of the mental impressions, conclusions, opinions, or
3    legal theories of an attorney or other representative of a party
     concerning the litigation.

4    Id.

5          Thus the protection is qualified; the documents for which attorney work product

6    protection is claimed must have been prepared in anticipation of litigation or for trial and may be

7    overcome by an appropriate showing by the opposing party.  In determining whether the

8    protection is available for a particular document, the court must consider the primary purpose of

9    the work product doctrine, which is to "prevent exploitation of a party's efforts in preparing for

10   litigation."  Admiral Ins. Co., 881 F.2d at 1494 (9th Cir. 1989).  Work product protection may

11   extend to subsequent litigation in which the party is involved.  FTC v. Grolier Inc., 462 U.S. 19,

12   25 (1983)(dictum)("But the literal language of the Rule [26(b)(3)] protects materials prepared for

13   any litigation or trial as long as they were prepared by or for a party to the subsequent litigation);

14   see also United States v. Pfizer, Inc., 560 F.2d 323, 355 (8th Cir. 1977)(work product protection

15   extends to all subsequent litigation), but see Republic Gear Co. v. Borg-Warner Corp., 381 F.2d

16   551, 557 (2nd Cir. 1967)(applies in subsequent litigation involving same transaction but different

17   party).

18         "The principal purpose of the voir dire examination is to probe each prospective

19   juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to

20   assess suspected bias or prejudice."  9A Charles Alan Wright & Arthur R. Miller, Federal

21   Practice and Procedure § 2482 at n.3 (Westlaw ed. 2007).  "The only objective of peremptory

22   challenges is to obtain an impartial jury, and no litigant is entitled to select a jury to its liking."

23   Id. (citation omitted).

24         In the instant case, the primary purpose of the prosecutor's notes during voir dire

25   is to assist in jury selection.  Because of this purpose, it is unlikely that these notes would reveal

26   the prosecutor's strategy, intended lines of proof, evaluation of strengths and weaknesses or

                                            3

1  inferences drawn as to the merits of the underlying criminal action.  Work product receives only

2  qualified protection from discovery so a court may order disclosure under certain circumstances.

3  In other to determine whether those circumstances exist in the instant action, the court must turn

4  to Rule 6.

5          Rule 6 of the Rules Governing Section 2254 Cases states:

6          A party shall be entitled to invoke the processes of discovery
           available under the Federal Rules of Civil Procedure if, and to the
7          extent that, the judge in the exercise of his discretion and for good
           cause shown grants leave to do so, but not otherwise.

8

9  Id.  The Supreme Court has construed Rule 6, holding that if, by setting forth specific allegations,

10  the petitioner can "show reason to believe that the petitioner may, if the facts are fully developed,

11  be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the

12  necessary facilities and procedures for an adequate inquiry."  Bracy v. Gramley, 520 U.S. 899,

13  908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

14          The Ninth Circuit Court of Appeals has pointed out that "[a] habeas petitioner

15  does not enjoy the presumptive entitlement to discovery of a traditional civil litigant."  Rich v.

16  Calderon, 187 F.3d 1064, 1068 (9th Cir.1999) (citing Bracy, 520 U.S. at 903-05).  "Rather,

17  discovery is available only in the discretion of the court and for good cause shown . . . ."  Id.  The

18  court instructed:

19          Habeas is an important safeguard whose goal is to correct real and
           obvious wrongs. It was never meant to be a fishing expedition for
20          habeas petitioners to "explore their case in search of its existence."

21  Rich, 187 F.3d at 1067.  Accordingly, a habeas petitioner will not be granted leave to conduct

22  discovery based on allegations that are purely speculative or without any basis in the record.  On

23  the other hand, a petitioner is not necessarily required to plead specific facts entitling him to

24  habeas relief prior to obtaining leave to conduct discovery.

25          Indeed, based on the Supreme Court's decision in Bracy, a petitioner may be able

26  to establish good cause for discovery even though he posits only a plausible theory for relief.  In

4

1  Bracy, the petitioner sought discovery to support a claim that, because the judge in his case was

2  convicted of taking of bribes from some criminal defendants, he was prone to "a sort of

3  compensatory bias against defendants who did not bribe [him]."  Bracy, 520 U .S. at 905.

4  Although Bracy had not alleged facts sufficient to establish that his particular case was infected

5  by such bias, the Supreme Court found that he was nonetheless entitled to conduct discovery

6  based on evidence that "lend[ed] support" to an actual bias claim.  Id., 520 U.S. at 909.  Thus, a

7  petitioner seeking leave to conduct discovery is not required to show that the requested discovery

8  is likely to lead to habeas relief, only that there is "reason to believe" that it "may" do so.  Id.,

9  520 U.S. at 908-09.

10            In the instant actions, this court has found that petitioners produced evidence

11  sufficient to permit the trial judge to draw an inference that the prosecutor struck all African

12  American potential jurors from the venire and scheduled an evidentiary hearing to provide

13  respondents with an opportunity to present evidence as to the prosecutor's race-neutral reasons

14  for the peremptory challenges.  (August 15, 2007 Order at 5.)

15            Both the United States Supreme Court and the Ninth Circuit Court of Appeals

16  have made clear the importance of discovering the actual reasons the prosecutor exercised the

17  peremptory challenges at trial.  Johnson v. California, 545 U.S. 162, 172 (2005)(Batson

18  framework "is designed to produce actual answers to suspicions and inferences that

19  discrimination may have infected the jury selection process."); See Paulino v. Castro, 371 F.3d

20  1083, 1090 (9th Cir. 2004 ("[I]t does not matter that the prosecutor might have had good reasons

21  . . .[w]hat matters is the real reason they were stricken.")  Moreover, the Supreme Court has

22  emphasized that society has an interest in this evaluation as well:

23            When the government's choice of jurors is tainted with racial bias,
          that "overt wrong . . . casts doubt over the obligation of the parties,
24            the jury, and indeed the court to adhere to the law throughout the
          trial . . . ."  Powers v. Ohio, 499 U.S. 400, 412, 111 S.Ct. 1364, 113
25            L.Ed.2d 411 (1991).  That is, the very integrity of the courts is

26  /////

1                        jeopardized when a prosecutor's discrimination "invites cynicism
respecting the jury's neutrality," id., at 412, 111 S.Ct. 1364,  and
2                        undermines public confidence in adjudication [citations omitted].

3  Miller-El v. Dretke, 125 S.Ct. 2317, 2324 (2005).

4          The underlying criminal convictions in the instant actions took place in 2000.  The

5  documents sought by petitioners may be the most direct evidence available to demonstrate the

6  prosecutor's actual reasons for exercising peremptory challenges.  This is particularly true given

7  the context of a Batson challenge.  Due to the passage of time and the fading of recollection, as

8  well as the difficulty inherent in ferreting out charges of discrimination, petitioners have

9  demonstrated good cause and substantial need for the discovery sought.  Given this difficulty and

10  complexity, other discovery tools would be ineffective.  The discovery is not sought to exploit

11  the prosecution's efforts in preparing for litigation.  Rather, petitioners seek this information to

12  pursue their constitutional right to equal protection, which outweighs any interest the state may

13  retain in these prosecutor's notes.  Accordingly, petitioners are entitled to discover the

14  prosecutor's notes taken during voir dire.

15          Respondents also contend that petitioners' requests to receive documents from the

16  prosecutor's other criminal cases are overbroad and argues that this court's Batson review is

17  limited to comparing seated jurors with excused jurors in the instant actions.  Miller-El, 545 U.S.

18  at 231.  Respondents argue that comparing any juror excused from petitioners' trial with jurors in

19  other criminal cases is beyond the scope of the evidentiary hearing.

20          Although the Miller-El court compared the seated jurors with those excused from

21  the underlying criminal trial, the court did not forbid nor even address the possibility that

22  information discovered from other criminal trials prosecuted by the same prosecutor in Miller-El

23  might disclose evidence of bias on that prosecutor's part.  Id.  Moreover, petitioners here have

24  not requested jurors' questionnaires from the other criminal prosecutions, but merely seek the

25  prosecution's notes from jury selection.  If those notes reflect that the prosecution exercised

26  peremptory challenges of all African-Americans from the venire in a criminal case involving an

1   African-American defendant, such evidence would not only be relevant, but powerful.  Indeed,

2   this prosecutor had exercised peremptory challenges to all African-Americans from the venire in

3   People v. Hargrove.  (See Hargrove v. Pliler, Case No. CIV S-03-1141 RRB JFM P,[2] Findings

4   and Recommendations filed July 31, 2007, at 5.)[3]  Petitioners would not be required to compare

5   jurors excused from those seated at the other criminal trials to demonstrate that all African-

6   American potential jurors were peremptorily challenged by this prosecutor in other prosecutions.

7            Accordingly, this court finds that petitioners have demonstrated good cause and

8   substantial need for the discovery requested and have presented specific factual allegations in

9   support thereof.  Petitioner's motion will be granted and the Clerk of the Court will be directed to

10  issue a subpoena duces tecum forthwith.

11           In light of the motion for discovery, the previously-set evidentiary hearing was

12  vacated.  Good cause appearing, the evidentiary hearing is rescheduled for Tuesday, December

13  18, 2007, at 10:00 a.m. before the undersigned.  See August 15, 2007 Order.

14           IT IS HEREBY ORDERED that:

15           1.  Petitioner's September 5, 2007 motion for discovery is granted; and

16           2.  The Clerk of the Court is directed to issue a subpoena duces tecum

17  commanding the San Joaquin County District Attorney's Office, on or before Monday,

18  November 19, 2007, to produce and permit inspection and copying of:  (a) its files relating to the

19  case of People v. Johnson and People v. Thompson, Case Nos. SF076772A and SF076772C,

20  including, but not limited to, any and all notes generated by the trial prosecutor, Deputy District

21  Attorney Ronald Freitas, regarding the jury selection proceedings in the above entitled matter

22  that are in the County's actual or constructive possession or control; and (b) any and all notes

23  _____

24  [2]  A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman,
    803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

25  [3]  The fact that the district court opted not to adopt the findings and recommendations but
    chose to rely on the state court's findings does not alter the fact that prosecutor Freitas
26  peremptorily challenged all African American jurors from the Hargrove panel.  Id.

7

1  generated by Ronald Freitas regarding jury selection in other prosecutions in which he conducted

2  the jury selection from February 1995 to February 2000.[4]

3            3.  This matter is set for evidentiary hearing on Tuesday, December 18, 2007, at

4  10:00 a.m.

5  DATED:  October 30, 2007.

6

7  UNITED STATES MAGISTRATE JUDGE

8

9  001; john2063.dsc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      [4] Notes, as used in the subpoena duces tecum, are defined as documents, memoranda, reports, or other writings, whether they are generated and/or maintained by hand, computer or are

26  recorded on audio or video tape, or on other electronic medium.